The CLARKSON COMPANY LIMITED, as Trustee in Bankruptcy, appointed by the Supreme Court of the Province of Newfoundland, of the Property of Newfoundland Refining Company Limited and Provincial Refining Company Limited, Plaintiff,

v.

John M. SHAHEEN, Roy M. Furmark, Albin W. Smith, Peter L. Caras, Paul W. Rishell, Shaheen Natural Resources Company, Inc., Newfoundland Refining Company Ltd., U. S. A., and Founders Corporation, Defendants.

The CLARKSON COMPANY LIMITED, etc., Petitioner,

v.

FOUNDERS CORPORATION, Macmillan Ring-Free Oil Co., Inc., Shaheen Natural Resources Company, Inc., and John M. Shaheen, Respondents.

The CLARKSON COMPANY LIMITED, etc., Petitioner,

v.

SHAHEEN NATURAL RESOURCES COMPANY, INC., John M. Shaheen, Macmillan Ring-Free Oil Co., Inc., and Ian W. Outerbridge, Respondents.

The CLARKSON COMPANY LIMITED, etc., Petitioner,

v.

Martin RUBIN and John M. Shaheen, Respondents.

The CLARKSON COMPANY LIMITED, etc., Petitioner,

v.

John M. SHAHEEN, Brown Harris Stevens, Inc., and 642 Park Avenue Corp., Respondents,

and

Barbara T. Shaheen, Michael Shaheen, and Bradford Shaheen, Intervening Respondents.

No. 76 Civ. 1373.

United States District Court,
S. D. New York.

June 4, 1982.

White & Case, New York City, for plaintiff/petitioner The Clarkson Co. Ltd.; Jeffrey Barist, Allan L. Gropper, Edna R. Sussman, Kevin Ashley, New York City, of counsel.

Saxe Bacon & Bolan, P. C., New York City, for defendants/respondents John M. Shaheen, Shaheen Natural Resources Co., Inc. and Founders Corp.; Thomas A. Andrews, Filip L. Tiffenberg, New York City, of counsel.

Trubin, Sillcocks, Edelman & Knapp, New York City, for respondent Macmillan Ring-Free Oil Co., Inc.; John Trubin, Roger R. Crane, Deirdre Kessler, New York City, of counsel.

Kornstein Meister & Veisz, New York City, for respondent Martin Rubin; Ronald W. Meister, New York City, of counsel.

Patrick J. Rohan, Bronxville, N. Y., for intervenors Barbara Shaheen, Michael Shaheen and Bradford Shaheen.

Spengler Carlson Gubar Brodsky & Rosenthal, New York City, for respondent Ian Outerbridge; Thomas H. Sear, J. Edward Meyer, III, Cynthia M. Brill, New York City, of counsel.

Netter, Dowd & Alfieri, New York City, for respondents Brown Harris Stevens, Inc. and 642 Park Avenue Corp.; Howard J. Adler, New York City, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Petitioner, Clarkson, seeks a judgment determining that it has priority as to certain shares of stock in Macmillan Ring-Free Oil Co., Inc. ("Macmillan") over Global Forwarding, Inc., Skidmore & Mason, Inc., Bona Vista Food Services, Ltd., and United Airlines, Inc. (the "Additional Respondents"). Clarkson and the Additional Respondents are all creditor claimants. I conclude, for the reasons set forth below, that Clarkson has priority. This inquiry is governed by Chapter 52 of the New York Civil Practice Law and Rules.

The present petition is only one of many in this multifaceted action, *see The Clarkson Company Limited, etc. v. Shaheen, et al.*, 660 F.2d 506 (2d Cir. 1981); *The Clarkson Company Limited, etc. v. Shaheen, et al.*, 525 F.Supp. 625 (S.D.N.Y.1981), familiarity with which is presumed. The procedural history of this particular situation is, however, crucial to the inquiry before me today and is therefore recited in some detail.

On July 1, 1980, petitioner obtained a judgment in this court against John M. Shaheen and others in the amount of approximately $50 million. In November, 1980 petitioner filed a motion in this court pursuant to N.Y.C.P.L.R. § 5225(a) seeking recovery of certain property in the posses-

sion of Shaheen Natural Resources, Inc. ("SNR") in satisfaction of its July, 1980 judgment. During the court's inquiry into petitioner's Section 5225(a) motion, Shaheen advised the court that certain assets of SNR, viz. 185,723 shares of Macmillan common stock, had been transferred to Ian Outerbridge, a Canadian citizen. On January 14, 1981, this court entered an order directing SNR to turn over personal property in its possession in partial satisfaction of the July 1980 judgment. Pursuant to Section 5234(c), on March 6, 1981 Clarkson obtained an order extending the priority it had won as a judgment creditor on January 14, 1981.

Upon learning of the transfer of the shares to Outerbridge, Clarkson took additional action. On December 5, 1980, this court ordered Macmillan and its transfer agents to refrain from transferring any Macmillan shares registered to SNR. On January 28, 1981, Clarkson commenced a supplementary proceeding pursuant to Section 5225(b) against SNR, Shaheen, Macmillan and Outerbridge seeking the turnover of the said shares. On March 13, 1981, while the supplementary proceeding was *sub judice*, this Court directed Outerbridge to turn over the shares to the Court and in satisfaction of that direction, with Court acquiescence, Outerbridge delivered the shares to his New York counsel, Spengler Carlson Gubar Brodsky and Rosenthal, to hold for the Court. On April 2, 1981, pursuant to Section 5232, Clarkson served a protective restraining order and execution on the Spengler Carlson firm forbidding that firm as garnishee from transferring the shares. On October 27, 1981, this Court decided the Clarkson motion of January 28, 1981, and voided the transfer of the shares by SNR to Outerbridge.

During this time, however, the Additional Respondents were pursuing their rights as well. All four Additional Respondents had separately recovered judgments against respondent SNR during the years 1976 to

1978. All of those judgments remain unsatisfied in whole or in part. Pursuant to Section 5230, N.Y.CPLR, three of the Additional Respondents, Global Forwarding, Skidmore & Mason, and United Airlines, each delivered an execution to the Sheriff on July 24, 1981, and the Sheriff levied against the Outerbridge shares by delivering a copy of the executions to Spengler Carlson on July 30, 1981. Additional Respondent Bona Vista also delivered an execution to the Sheriff on September 4, 1981, and the Sheriff levied against Spengler Carlson on September 8, 1981. Spengler Carlson refused to transfer any of the Shares pursuant to these four executions.

Thereafter, pursuant to Section 5225(b), N.Y.CPLR, the four Additional Respondents brought a proceeding in state court seeking an order directing Spengler Carlson to turn over the shares to the Sheriff so that the Sheriff could sell these shares for their benefit. Pursuant to Section 5232(a), N.Y.CPLR, the commencement of these turnover proceedings within 90 days of the Sheriff's levies extended any priority the Additional Respondents had gained by virtue of these levies and preserved whatever status they had by virtue thereof as execution creditors.[1] On November 2, 1981, this Court restrained the Additional Respondents from further prosecution of their state turnover proceeding.

The parties' dispute arises out of this labyrinthine procedural history. In sum, Additional Respondents claim that they have a prior right to the said shares, because: (1) they are all judgment creditors of SNR dating from the years 1976 to 1978; (2) they all delivered executions to the Sheriff and caused levy to be made on Spengler Carlson pursuant to Section 5230 between July and September 1981; and (3) pursuant to Section 5232(a) they all preserved the priority they had gained by virtue of their execution and levy by bringing a Section 5225(b) proceeding. The Additional Respondents further claim that their priority is senior to any creditor's priority

---

1. In a similar fashion, of course, Clarkson had extended its priority as a judgment creditor of SNR on March 6, 1981.

secured after July and September 1981 and that pursuant to Section 5232(a) Clarkson's priority as to the said shares lapsed 90 days after it had served its April 2, 1981 order and execution on Spengler Carlson. The Additional Respondents concede that Clarkson had priority for 90 days following April 2, 1981 and that, had Clarkson satisfied the requirements of Section 5232(a), its priority would still be senior to their priority. Tr. at 19–20 (2/26/82).

Clarkson disputes the Additional Respondents' claim that its priority lapsed 90 days after April 2. Rather, Clarkson contends that its priority has been secure since that date. Moreover, Clarkson also contends that because this Court's October 27, 1981 decision rendered the Outerbridge transfer void *ab initio*, Clarkson's priority extends from this Court's order of January 14, 1981 which was extended by order of the Court pursuant to Section 5234(c) on March 6, 1981. I consider first the parties contrasting views of Section 5232(a). Because this section in my judgment resolves the dispute in favor of Clarkson, I need not reach Clarkson's second argument.

My inquiry starts with the parties' agreement that as of April 2, 1981, Clarkson had priority as to the said shares by virtue of its execution and levy. From that point on, however, the parties disagree about the operation of Section 5232(a). In pertinent part, that section states:

> At the expiration of 90 days after a levy is made by service of the execution, or of such further time as the court, upon motion of the judgment creditor has provided, the levy shall be void except as to property or debts which have been transferred or paid to the sheriff *or as to which a proceeding under sections 5225 or 5227 has been brought.* (Emphasis added.)

On the one hand, Clarkson contends that its preexisting January 28, 1981 Section 5225(b) proceeding satisfies the above requirement for continuing its levy. The Additional Respondents contend, on the other hand, that in order to have prevented the levy from becoming void, the supplementary Section 5225 proceeding would have had to have been commenced *during* the 90 day period. Upon the resolution of that issue turns the outcome of this petition.

As I stated above, a levy against a garnishee such as Spengler Carlson (or Outerbridge) is void after 90 days unless either the 90 day order has been extended or a section 5225 or 5227 proceeding has been commenced. The purpose of this requirement is two-fold: "to minimize the burden [of the levy] on the garnishee and to expedite the transfer or payment to the sheriff of property or debts subject to the levy." 6 Weinstein, Korn, & Miller, ¶ 5232.14. The 90-day requirement therefore envisions the following: A judgment creditor discovers that some property of the judgment debtor is in the hands of a third-party garnishee. Creditor, therefore, delivers an execution to the sheriff causing a levy to be made against garnishee. At that point, the latter has two options. Either it can turn over debtor's property to creditor or it can refuse to do so. If it does not voluntarily hand over debtor's property, then creditor must take further action. Creditor either can seek an extension of the 90 day period or can commence a supplementary proceeding to determine whether the subject property belongs to debtor or garnishee. If creditor takes neither step, then its levy becomes void after 90 days and garnishee is free to hold or transfer the subject property as it will. *See* David D. Siegel, *Practice Commentaries* § C5232:3. Therefore, a levy will be effective for 90 days and become void thereafter unless the execution creditor takes further action to determine the respective rights of the judgment debtor and the garnishee as to the disputed property. Normally, of course, the creditor will first levy and then bring a supplementary proceeding if necessary.

Here, however, Clarkson inverted the normal course. Clarkson anticipated that Outerbridge would contest ownership rights in the said shares and acted thereon *before* Clarkson anticipated that other creditors might proceed against those shares. Thus, on January 8, 1981, pursuant to Section 5225(b), Clarkson had already commenced a proceeding to determine ownership rights in the said shares, only later, on April 2, 1981, levying against those shares. Clarkson,

thereby, both levied against the disputed property and took the required step to effectuate its levy. I find therefore that in spite of this inversion of the normal course Clarkson has satisfied the dictates of Section 5232. Moreover, were I to follow the Additional Respondents' proposed reading of Section 5232(a), I would have to find Clarkson's levy void for the sole reason that having commenced one Section 5225 proceeding in January, it failed to commence *a second identical proceeding* during the 90-day levy period. I cannot and do not read Section 5232 in a manner requiring such duplicative effort.[2] I therefore conclude that Clarkson's rights in the said shares are prior to and superior to those of the Additional Respondents.

Settle order on notice.

---

**2.** The Additional Respondents endeavor to bolster their position by citation to two commentators. The first states that "The levy will . . . remain in force beyond the 90 days if a special proceeding under CPLR 5225 or 5227 has been commenced *within that period.*" 6 Weinstein, Korn & Miller ¶ 52532.14 (emphasis added). The second states that "This step must be taken *within the 90-day period following the levy* . . . ." Siegel Commentaries § C5232:3. In response to these authorities, I refer to the language of the statute. Section 5232 speaks in terms of whether a proceeding "has been brought." By its terms, it places no limitation on whether that proceeding must be brought within the 90-day period, and the commentators' views, in my judgment, merely state the customary timetable, *see supra.*

The Additional Respondents also refer me to *In re Estate of Robbins,* 74 Misc.2d 793, 346 N.Y.S.2d 86, (Surr.Ct. Suffolk Co. 1973). I note only that the *Robbins* case was concerned merely with the expiration of the extension period of the levy. It does not discuss when a supplementary proceeding must be commenced.